UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SOREE A. RUSSELL,

        Plaintiff,                     Case No. 19-12501

vs.                                       HON. MARK A. GOLDSMITH

HOME DEPOT, INC.,

        Defendant.
_____/

**OPINION & ORDER
(1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 24)
AND (2) DENYING AS MOOT DEFENDANT'S MOTION TO EXCLUDE PLAINTIFF'S
EXPERT (Dkt. 25)**

This matter is before the Court on Defendant Home Depot, Inc.'s motion for summary judgment (Dkt. 24) and its motion to exclude Plaintiff Soree Russell's retained expert (Dkt. 25). The motions have been fully briefed. Because oral argument will not assist in the decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). For the reasons discussed below, the Court grants Home Depot's motion for summary judgment. Because the Court's decision regarding summary judgment is dispositive of all of Russell's claims, Home Depot's motion to exclude Russell's expert is denied as moot.

### I.    BACKGROUND

This personal injury action arises from a slip and fall that occurred while Russell was shopping at a Home Depot store located in Detroit, Michigan. Russell went to Home Depot to purchase bags of mortar and concrete mix for a home-improvement project. Russell Dep. at 41–44 (Dkt. 32-2). As Russell entered the store, an employee gave her a shopping cart; Russell placed her handbag and cane inside the cart and held onto the cart's handle for stability while walking.

Id. at 63–64. Russell proceeded to enter the store, turned left to walk down the main aisle, and then turned right to walk down Aisle 18—where she was informed the mortar and concrete was located. Id. at 57–59, 68–70; Diagram of Travel Path (Dkt. 24-3).

Alone in Aisle 18, Russell located the mortar and concrete mix, which were packaged in two bags weighing 40 pounds and 60 pounds. Russell Dep. at 67, 71. Because Russell was unable to lift the bags, another customer shopping in a different aisle assisted her with loading the bags into her shopping cart. Id. at 67, 72–73. After the bags were loaded, Russell walked with the cart toward the back of the store. Id. at 74. As she walked, Russell's right foot "slid in a pile of sand," and she fell to the ground. Id. at 74, 81–82. Russell stated that after she fell, her right pant leg was covered in white dust or a sandy substance, and that her shoe was full of the sandy substance. Id. at 82, 85, 93, 102.

Before the other customer loaded the two bags into her cart, Russell observed nothing out of the ordinary in Aisle 18. Id. at 73–74. She did not observe the pile of sandy substance until she "slipped in it and fell." Id. at 82. She did not determine the source of the sandy substance, id. at 90, nor did she recall the approximate dimensions or depth of the pile, id. at 92–94. Likewise, she did not know how long the sandy substance had been present on the floor. Id. at 90. When shown photographs taken on the date of her accident, Russell agreed that the floor was grey concrete and that she could see a white substance on the floor. Id. at 118; Photographs at PageID.224–225 (Dkt. 24-4). In the photographs, Russell also identified her footprint in the sandy substance. Russell Dep. at 119; Photographs at PageID.225.

When Russell got up after her fall, she walked toward the front of the store for assistance. Russell Dep. at 85. Nikita Hursey, an on-duty assistant store manager, responded to a call regarding Russell's fall. Hursey Dep. at 8, 14–15 (Dkt. 24-5). Hursey spoke to Russell, who

reported that she slipped and fell on a sandy substance from a torn bag of concrete mix. Id. at 26. The parties do not dispute that mortar and concrete mix are composed of dry, sandy material. See Pl. Counter-Statement of Material Facts ¶ 4 (Dkt. 33); Def. Resp. to Counter-Statement of Material Facts ¶ 4 (Dkt. 35). Hursey also inspected Aisle 18 but did not take pictures of the area. Hursey Dep. at 31, 33. She provided the following description of Aisle 18 on the day of the incident:

> Well, the products are in the bay. There's [sic] pallets. Concrete comes on pallets so it's always on pallets. Because of the way it's handled customers yank it out. Some of them get opened. Some spill on the floor. So I don't exactly remember how everything was that day but I know in the bays that we had pallets where there was broken bags but not lying around on the floor, no.

Id. at 34. Although she acknowledged that there were broken bags of concrete mix on the pallets on the day of Russell's accident, Hursey did not recall counting the number of broken bags. Id. Based on her inspection of the area, Hursey determined that nothing appeared "out of kilter" and that no remedial measures were necessary. Id. at 49.

In her complaint, Russell asserts a claim of ordinary negligence stemming from Home Depot's allegedly defective method of displaying its products and a claim of premises liability stemming from the presence of sandy substance in Aisle 18. Home Depot seeks summary judgment, arguing that Russell's claims sound exclusively in premises liability—for which Home Depot cannot be held liable given its lack of notice of the hazard and the fact that the hazard was open and obvious. Mot. at 11–17 (Dkt. 24).

## II. MOTION STANDARDS

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the

3

governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." Horton v. Potter, 369 F.3d 906, 909 (6th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

### III. ANALYSIS

In claiming that it is entitled to summary judgment, Home Depot asserts three primary arguments. First, it contends that Russell is unable to maintain an ordinary negligence claim where the facts underlying the case sound exclusively in premises liability. Mot. at 11. Second, it argues that Russell fails to support her premises liability claim with evidence that Home Depot either created or was on notice of the sandy substance on the floor of Aisle 18. Id. at 12–16. Finally, Home Depot contends that the sandy substance was an open and obvious danger such that Home Depot owed no duty to protect Russell from this condition. Id. at 17–20.

As fully explained below, the Court agrees that Russell is precluded from asserting an ordinary negligence claim and that she has failed to adduce evidence showing that Home Depot either created or was on notice of the sandy substance in Aisle 18. Because these two findings are dispositive of Russell's claims, the Court need not confront Home Depot's remaining argument that the sandy substance presented an open and obvious danger.

4

### A. Ordinary Negligence

The parties first dispute whether Russell may assert an ordinary negligence claim independent from her premises liability claim. Because Russell's injuries arise from an allegedly dangerous condition on the land, Home Depot maintains that her claims sound exclusively in premises liability. Mot. at 11. Russell, by contrast, argues that she has independently asserted an ordinary negligence claim stemming from Home Depot's negligent design and maintenance of a product display. Resp. at 22–24 (Dkt. 33). Home Depot has the better part of the argument.

Although Russell's complaint asserts an ordinary negligence claim in addition to a premises liability claim, "[c]ourts are not bound by the labels that parties attach to their claims." Buhalis v. Trinity Continuing Care Servs., 822 N.W.2d 254, 258 (Mich. Ct. App. 2012).[1] Instead, courts must determine the nature of an action "by reading the complaint as a whole, and by looking beyond mere procedural labels . . . ." Adams v. Adams, 742 N.W.2d 399, 403 (Mich. Ct. App. 2007). "Michigan law distinguishes between claims arising from ordinary negligence and claims premised on a condition of the land." Buhalis, 822 N.W.2d at 258 (citing James v. Alberts, 626 N.W.2d 158, 161–162 (Mich. 2001)). "If the plaintiff's injury arose from an allegedly dangerous condition on the land, the action sounds in premises liability rather than ordinary negligence; this is true even when the plaintiff alleges that the premises possessor created the condition giving rise to the plaintiff's injury." Id.

Russell's claims center on her injuries sustained when she slipped and fell on a sandy substance, an allegedly dangerous condition on Home Depot's premises. In connection with her

---

[1] In this diversity action, the Court must "'apply state law in accordance with the then controlling decision of the highest state court' of the forum state." NAS Sur. Grp. v. Cooper Ins. Ctr., Inc., 617 F. Supp. 2d 581, 584 (W.D. Mich. 2007) (quoting Bailey Farms, Inc. v. NOR-AM Chem. Co., 27 F.3d 188, 191 (6th Cir. 1994)). The parties do not dispute that Michigan substantive law controls. See Mot. at 11; Resp. at 7.

ordinary negligence claim, Russell's complaint alleges that Home Depot had a duty "to use due care to <u>maintain the safety</u> of its store," that it negligently failed to design its displays in a manner "to <u>minimize the risk of spills</u> on the floor of the aisles," and that it failed to inspect its aisles for "<u>hazardous conditions</u> that posed an unreasonable risk of harm" to its invitees. Compl. at ¶¶ 17–18 (Dkt. 1) (emphasis added). Even Russell's briefing confirms that her claims stem from an allegedly hazardous condition on the land, as she argues that her "allegations support the theory that <u>the dangerous condition in Aisle 18</u> was caused by the conduct of employees at the Detroit Store." Resp. at 24 (emphasis added). Michigan courts have observed that such language relates to principles of premises liability rather than ordinary negligence. <u>E.g.</u>, <u>England v. Meijer</u>, No. 322065, 2015 WL 6161735, at *3 (Mich. Ct. App. Oct. 20, 2015).

Russell contends that her ordinary negligence claim independently alleges that Home Depot employees were negligent in designing and maintaining the product display in a manner that resulted in frequent breakage of bags and spills of concrete mix. Resp. at 24. But federal and state courts in Michigan have rejected similar attempts to transform premises liability claims into ordinary negligence claims based merely on allegations that the premises possessor or its employees were negligent in designing or maintaining a product display. <u>See, e.g.</u>, <u>Ramadan v. Home Depot, Inc.</u>, 504 F. Supp. 3d 695, 707 (E.D. Mich. 2020) (rejecting the plaintiff's argument that the defendant's failure to exercise ordinary care in setting up and monitoring a display constituted "independent conduct that can be the basis for liability under a theory of ordinary negligence"); <u>Zacharski v. Wal-Mart Stores, Inc.</u>, No. 274410, 2007 WL 1491295, at *2 (Mich. Ct. App. 2007) (holding that an ordinary negligence claim based on allegations that the defendant's in-store display was defective sounded in premises liability).

Relying on Laier v. Kitchen, 702 N.W.2d 199, 208 (Mich. Ct. App. 2005), Russell correctly contends that the assertion of a premises liability claim "does not preclude a separate claim grounded on an independent theory of liability based on the defendant's conduct.'" In Laier, the decedent was crushed by the bucket of a front-end loader tractor while attempting to repair the tractor on the defendant's property. Id. at 204. In addition to a premises liability claim, the plaintiff brought an ordinary negligence claim stemming from the defendant's failure to use due care while operating the tractor. Id. at 208–209. The court upheld the plaintiff's ordinary negligence claim on the ground that the defendant's operation of equipment on the premises represented overt conduct that created a separate duty to use ordinary care, independent of the duties owed by a premises possessor. Id.

Additionally, Russell cites Cote v. Lowe's Home Center, Inc., 896 F. Supp. 2d 637 (E.D. Mich. 2012), in support of her argument that she can maintain an ordinary negligence claim independent from her premises liability claim. Resp. at 23. In that case, a customer at the defendant's store was hit in the back of the head by a falling box. Id. at 638. Because testimony showed that the box fell from a shelf in an aisle where an employee was working, the court held that the evidence would support either a premises liability or an ordinary negligence claim:

> Defendant is correct that in a case if a box falls without any employees being present, a reasonable argument could be made that the claim would sound in premises liability, not ordinary negligence. This, however, is not that case. Here, it is reasonable to infer that Plaintiff's alleged injury was not caused by "by a condition of the land," but by an employee's activities—specifically, his lack of care in handling the boxes. Defendant is not entitled to summary judgment on Plaintiff's negligence claim.

Id. at 649 (footnote omitted).

Both Laier and Cote are distinguishable from the present action, as those cases involved overt conduct by or on behalf of the defendants that caused or contributed to the injuries at issue,

independent from any condition on the land. Other courts have likewise distinguished Laier where the ordinary negligence claim at issue was premised on conduct inseparable from a condition on the land. See Ramadan, 504 F. Supp. 3d at 707 (dismissing an ordinary negligence claim where the plaintiff's injuries were allegedly caused by an unsecured piece of metal trim that fell from a display, rather than by "separate, independent conduct" by the defendant or its employees); England, 2015 WL 6161735, at *4 (dismissing an ordinary negligence claim where the plaintiff's injuries were allegedly caused by liquid laundry detergent spilled on the ground, rather than by an overt act of the defendant or its employees). And Cote expressly acknowledged that in the absence of any overt act by an employee, "a reasonable argument could be made that the claim would sound in premises liability, not ordinary negligence." Cote, 896 F. Supp. 2d at 649.

Unlike the plaintiffs in Laier and Cote, Russell does not claim that a Home Depot employee took affirmative action that directly caused her injuries—in fact, she alleges that she was alone in Aisle 18 before the other customer assisted her in loading the bags of mortar and concrete into her cart. See Russell Dep. at 67, 71. Instead, her injuries resulted from the presence of a spilled sandy substance on the floor, a prototypical condition on the land. See, e.g., England, 2015 WL 6161735, at *5 (holding that a spill is a condition on the land). And as indicated above, the allegedly negligent design and maintenance of a product display is not considered independent conduct giving rise to an ordinary negligence claim. Ramadan, 504 F. Supp. 3d at 707; see also Gorsline v. Speedway LLC, No. 16-cv-13002, 2017 WL 4098828, at *6 (E.D. Mich. Sept. 15, 2017) (holding that the allegedly negligent placement of a store display is not premised on conduct independent of a condition on the land).

Accordingly, Home Depot is entitled to summary judgment on Russell's ordinary negligence claim.

### B. Notice

Home Depot next argues that Russell fails to support her premises liability claim with evidence that Home Depot either created or had actual or constructive notice of the sandy substance in Aisle 18. Mot. at 12–16. Russell, in turn, argues that Home Depot either created or had actual notice of the hazard by negligently displaying its products in a manner that resulted in frequent spills of concrete mix. Resp. at 20. Additionally, Russell maintains that Home Depot had constructive notice of the dangerous condition because it is unable to show that it fulfilled its duty to inspect its premises and because spilled concrete mix in Aisle 18 was a recurring danger. Id. at 17, 19, 21.

"In general, a premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." Lugo v. Ameritech Corp., Inc., 629 N.W.2d 384, 386 (Mich. 2001). To prevail on a premises liability claim, "a plaintiff must present evidence that the defendant created the dangerous condition or had actual or constructive notice of it." Wellman v. Wal-Mart Stores, Inc., 192 F. Supp. 2d 767, 773 (W.D. Mich. 2002). To prove actual or constructive notice, a plaintiff must show "that [the] defendant knew about the [dangerous condition] or should have known of it because of its character or the duration of its presence." Lowrey v. LMPS & LMPJ, Inc., 890 N.W.2d 344, 350 (Mich. 2016).

The Court first evaluates whether Home Depot either created or had actual notice of the dangerous condition and then turns to whether Home Depot had constructive notice.

### 1. Creation of the Condition & Actual Notice

As noted above, a premises possessor is liable for an injury "where the premises owner or possessor himself unreasonably creates, tolerates or causes a dangerous condition." Cerrito v. K-

Mart Corp., No. 294660, 2011 WL 1519649, at *3 (Mich. Ct. App. Apr. 21, 2011) (citing Hampton v. Waste Mgmt. of Mich., Inc., 601 N.W.2d 172 (Mich. Ct. App. 1999)). Likewise, a premises possessor may be held liable where the possessor actually knew about a dangerous condition on the land. Lowrey, 890 N.W.2d at 350.

As argued by Home Depot, none of the evidence shows that a store employee created the dangerous condition by spilling the sandy substance on the floor. Because the sandy substance was in an area of the store accessible to customers, Russell Dep. at 91, it cannot be inferred that an employee must have spilled the substance, see Wellman, 192 F. Supp. 2d at 773 (holding that the plaintiff could not establish that the storeowner caused the dangerous condition when the hazard could have been caused by a customer). Further, Russell admitted that she was unable to determine the source of the sandy substance. Russell Dep. at 90.

Nor does the evidence reveal that a Home Depot employee had actual knowledge of the sandy substance in Aisle 18 before Russell's fall. Neither of the two Home Depot employees who were deposed—Hursey and account specialist Marquise Rowser—testified that she was aware of the presence of sandy substance in Aisle 18 before Russell reported the issue. See generally Hursey Dep.; Rowser Dep. (Dkt. 24-6). And Russell's testimony indicates that no store employees were present in Aisle 18. Russell testified that she was the only person in Aisle 18 when she arrived at the aisle and that she did not know if anyone else was present at the time she fell. Russell Dep. at 71, 77. After her fall, Russell walked to the front of the store for assistance, indicating that no employees were in the aisle. Id. at 85; Resp. at 18. Accordingly, Russell has not demonstrated that any Home Depot employees were present in Aisle 18 such that they would have had actual notice of the sandy substance.

Though Russell apparently concedes that she cannot show that a Home Depot employee spilled or had actual notice of the sandy substance in Aisle 18, she contends that Home Depot caused the hazard in a different way—by displaying its products in a manner that resulted in "inevitable and routine" spills of concrete mix. Resp. at 20.[2] Courts have held that a storekeeper's failure to maintain a reasonably safe display may support a finding that the storekeeper created the dangerous condition. Cerrito, 2011 WL 1519649, at *2–3 (finding that a reasonable juror could conclude that the store created an unreasonable danger where its employee negligently placed an unstable item on a high shelf); see also Gates v. Variety Wholesalers, Inc., 882 F. Supp. 157, 160 n.2 (M.D. Ala. 1995) (noting that the defendant may have created a hazard by negligently assembling a store display that subsequently collapsed).

In her response to Home Depot's motion, however, Russell presents no evidence supporting her theory that Home Depot created the hazard by negligently designing its product display. The evidence regarding the display is limited. Photographs of the scene of Russell's fall depict how bags of mortar and concrete mix were displayed—with the bags stacked on top of wooden pallets that were inserted into the bays on the sides of the aisle. See Photographs at PageID.222–226. Hursey testified that some bags tear open and spill "because of the way [they are] handled" since customers "yank" them out. Hursey Dep. at 34. But in her response brief, Russell does not offer any further explanation or evidence establishing that Home Depot's product display was negligently designed in a manner that made breakage of the bags frequent or routine.

The Court notes that on May 18, 2020, Russell filed on the docket a report authored by Jerry Birnbach, a retail safety expert. Birnbach Report (Dkt. 20). In this report, Birnbach took

---

[2] Although Russell also contends that the recurring nature of the spills of concrete mix gave rise to actual notice of the danger, Resp. at 19, this issue relates to constructive notice and is addressed below.

issue with Home Depot's method of displaying bulk bags of concrete mix, as depicted in the photographs. Id. at 2–3. He noted that the display fails to comply with industry standards requiring that products not extend more than four inches past the front edge of the shelf—a standard intended to mitigate the risk that bags may be ripped open as people walk past. Id. This report, however, is neither referenced in nor attached to Russell's response brief. Because Russell fails to incorporate this evidence into her responsive briefing, the Court declines to develop her arguments for her by considering the report in connection with the present motion. See McPherson v. Kelsey, 125 F.3d 989, 995–996 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (punctuation modified, citation omitted).

Accordingly, Russell has failed to come forward with evidence showing that Home Depot either created or had actual notice of the hazardous condition.

### 2. Constructive Notice

Next, Home Depot contends that Russell is unable to adduce any evidence showing that it had constructive notice of the sandy substance in Aisle 18. To establish constructive notice, a plaintiff must prove that "the hazard was of such a character, or had existed for a sufficient time, that a reasonable premises possessor would have discovered it." Lowrey, 890 N.W.2d at 350.

Russell is unable to establish constructive notice on these two criteria. She was unable to describe the approximate dimensions of the pile of sandy substance and did not know how long the substance had been present on the floor. Russell Dep. at 90, 92–94. Russell contends that a reasonable juror could infer that Home Depot should have discovered the sandy substance, given that it covered her right pant leg and shoe and that she observed her footprint in it. Resp. at 21.

But these facts do not support any particular conclusion relative to the character of the spilled sandy substance. See Lowrey, 890 N.W.2d at 351 ("[P]laintiff's assumption that the stairs must have been wet because her pants were wet after her fall does not support any particular conclusion concerning the character of the condition."). Further, although Russell described the sandy substance as white in color and the floor as grey concrete, Russell Dep. at 82, 118, photographs demonstrate that the substance was a similar color to and blended in with the floor, Photographs at PageID.224–225. Accordingly, Russell has failed to present evidence showing that the sandy substance was of such a character or existed for a sufficient time that Home Depot should have discovered it.

Russell offers two additional arguments regarding Home Depot's constructive notice. First, she suggests that Home Depot is unable to show a lack of constructive notice because it failed to fulfill its duty to inspect its premises. Resp. at 16–17. This argument may be dispensed with summarily. To be entitled to summary judgment on a premises liability claim, a defendant need not present evidence of routine or reasonable inspection to prove that it did not have notice; it need show only that the plaintiff failed to present sufficient evidence of notice. Lowrey, 890 N.W.2d at 349–350.

Second, Russell contends that Home Depot had constructive notice of the sandy substance in Aisle 18 because spilled concrete mix was a recurring danger. Resp. at 17–18, 21. Beyond this bare assertion, however, Russell fails to develop this argument with citation to or discussion of any authority relating to a theory of recurring danger. Again, because the Court is under no obligation to develop Russell's perfunctory argument, it would be justified in declining to consider this theory of constructive notice. See McPherson, 125 F.3d at 995–996.

Even if the Court were to consider the merits of Russell's argument, it is ultimately unavailing. Michigan courts have acknowledged the principle that constructive notice may be imputed to a landowner who is aware of a recurring condition that poses a potential danger. For example, in Andrews v. K Mart Corp., 450 N.W.2d 27, 29 (Mich. Ct. App. 1989), the plaintiff allegedly slipped and fell on a rug as she left the defendant's store. After she fell, the plaintiff and her husband observed that the rug was curled up at the place where she tripped. Id. Noting that a store employee testified that the rugs used by the store tended to curl up along the edges in the winter and were thus routinely replaced by the store, the court held that a reasonable inference of constructive notice could be drawn. Id. at 30.

A different outcome was reached in Bursey v. Autozone (Michigan), Inc., No. 257383, 2006 WL 657036, at *1 (Mich. Ct. App. Mar. 16, 2006), which involved a plaintiff who slipped on oil in the defendant's parking lot. Because the defendant was aware that its customers often replaced their cars' oil in the parking lot and that the oil sometimes leaked out of the parked cars, the plaintiff argued that the defendant was on notice of a recurring hazard. Id. at *1–2. In rejecting this argument, the court distinguished the case from Andrews on the ground that the defendant in Andrews "was aware of a specific problem with a specific item that occurred at a specific time and at a specific location." Id. at *2. In Bursey, by contrast, the evidence did not show that the presence of oil in the parking lot was a consistent or frequent problem. Id. Rather, the evidence showed that oil was sometimes present in the parking lot, that the defendant applied an oil-dry product only on an as-needed basis, and that customers normally did not spill oil when filling their cars. Id.

Here, Russell maintains that a jury could reasonably conclude that spills of concrete mix occurred with such frequency that Home Depot had constructive notice of the recurring danger.

14

Resp. at 21. In support of her position, Russell relies on Hursey's acknowledgment that when customers "yank" out bags of concrete mix from pallets located in the bays in Aisle 18, "[s]ome of them get opened" and "[s]ome spill on the floor." Hursey Dep. at 34. Hursey further admitted that on the day of Russell's fall, the pallets contained broken bags of concrete mix, id., although she was not asked, and did not state, whether she learned of this before or after the accident.

Hursey's testimony does not establish that spills of concrete mix in Aisle 18 were "routine" or "constant." Hursey did not testify how frequently spills occurred; instead, she merely stated that "some" bags are torn open and that "some" bags spill on the floor. Id. Given the lack of evidence demonstrating that the bags of concrete mix tended to break on a regular basis, this case presents facts similar to those in Bursey and unlike those in Andrews. And under Bursey, a general awareness that a hazard can "sometimes" develop is insufficient to put a landowner on constructive notice of a particular hazard.[3] There is simply no evidence in the record establishing that spills of concrete mix occurred in Aisle 18 with sufficient frequency to give rise to constructive notice of the hazardous condition.

Russell, therefore, has failed to come forward with evidence showing that Home Depot had constructive notice of the sandy substance in Aisle 18. Because she is unable to establish that Home Depot created or had actual or constructive notice of the hazard, Home Depot is entitled to summary judgment on Russell's premises liability claim.

---

[3] Likewise, a storeowner's general awareness that grapes had fallen from a grocery store display in the past did not give rise to constructive notice that they fell on a particular occasion. Duncan v. Meijer, No. 313952, 2013 WL 5989723, at *2 n.1 (Mich. Ct. App. Nov. 12, 2013).

## IV. CONCLUSION

For the reasons stated above, the Court grants Home Depot's motion for summary judgment (Dkt. 24) and denies as moot Home Depot's motion to exclude Russell's expert (Dkt. 25).

SO ORDERED.

Dated: August 12, 2021  　　　　　　　　　s/Mark A. Goldsmith
      Detroit, Michigan  　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　United States District Judge